---

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

CAMPAIGN LEGAL CENTER,
*Plaintiff-Appellant*,

*v.*

45COMMITTEE, INC.,
*Defendant-Appellee*,

---

On Appeal from the United States District Court
for the District of Columbia, No. 1:22-cv-1115-APM
Before the Honorable Amit P. Mehta

---

**APPELLANT'S REPLY BRIEF**

---

Adav Noti
Kevin P. Hancock
Molly E. Danahy
Alexandra Copper
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
mdanahy@campaignlegalcenter.org

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

GLOSSARY ............................................................................................... vi

INTRODUCTION ....................................................................................... 1

ARGUMENT .............................................................................................. 2

    I.    The District Court Erred by Overruling the Delay Court. ......................... 2

        A.  FECA's Citizen-Suit Prerequisites Are Not Jurisdictional. ............ 3

        B.  45Committee Misunderstands the Basis for Preclusion Here. ........ 8

    II.    The FEC Did Not Conform to the Delay Court's Order. ......................... 12

        A. FEC Deadlocks Are Not Dismissals or Any Other Action. ........... 12

            1.  Statutory Text ...................................................................... 13

            2.  FEC Policy and Practice ...................................................... 16

            3.  Precedent ............................................................................. 17

            4.  FEC's Structure and Private FECA Enforcement .............. 19

        B.  Even if Deadlocks Are Action, the December 2021 Vote Was Not ................................................................................................. 23

    III.    Even if the FEC Did Conform, Equity Demands Reversal Because the FEC Prevented Campaign Legal from Satisfying the Preconditions. ....... 24

    IV.    This Suit Does Not Implicate Article II. ................................................. 25

CONCLUSION ......................................................................................... 27

CERTIFICATE OF COMPLIANCE ........................................................ 29

CERTIFICATE OF SERVICE ................................................................. 30

# TABLE OF AUTHORITIES

**Cases**                                                 **Pages**

*45Committee, Inc. v. Federal Election Commission*,
No. 22-cv-502 (D.D.C. June 24, 2022) ................................................. 17

*Campaign Legal Center v. Iowa Values*,
573 F. Supp. 3d 243 (D.D.C. 2021) ........................................... 10, 20, 26

*Citizens for Responsibility and Ethics in Washington
v. American Action Network*, 410 F. Supp. 3d 1 (D.D.C. 2019) ......... 3, 26

*Citizens for Responsibility and Ethics in Washington v. Federal Election
Commission*, 892 F.3d 434 (D.C. Cir. 2018)
("*Commission on Hope*") ................................................................. 19, 26

*Citizens for Responsibility and Ethics in Washington v. Federal Election
Commission*, 993 F.3d 880 (D.C. Cir. 2021) ("*New Models*") ......... 14, 18

*Citizens for Responsibility and Ethics in Washington v. Federal Election
Commission*, No. 22-cv-3281-CRC, 2023 WL 6141887
(D.D.C. Sept. 20, 2023) ("*American Action*") ..... 12, 13, 16, 18, 19, 22, 23

*Common Cause v. Federal Election Commission*,
842 F.2d 436 (D.C. Cir. 1988) ................................................................. 19

*Democratic Congressional Campaign Committee v.
Federal Election Commission*, 831 F.2d 1131 (D.C. Cir. 1987) ............. 20

*Dellums v. U.S. Nuclear Regulatory Commission*,
863 F.2d 968 (D.C. Cir. 1988) ................................................................... 7

*Democratic Senatorial Campaign Committee v. National Republican
Senatorial Committee*, 1:97-cv-1493-JHG
(D.D.C. filed June 30, 1997) ................................................................... 21

*Englerius v. U.S. Government*, 376 F. App'x 765 (9th Cir. 2010) ..................... 3

*Epic Systems Corporation v. Lewis*, 138 S. Ct. 1612 (2018) ........................... 15

*Federal Election Commission v. Akins*, 524 U.S. 11 (1998) ............................ 27

*Federal Election Commission v. National Republican Senatorial Committee*,
966 F.2d 1471 (D.C. Cir. 1992)............................................................. 18

*Heritage Action for America v. Federal Election Commission*,
No. 22-cv-1422 (D.D.C.)........................................................................ 22

*In re Carter-Mondale Reelection Commission, Inc.*,
642 F.2d 538 (D.C. Cir. 1980)................................................................ 4

*In re Sealed Case*, 223 F.3d 775 (D.C. Cir. 2000) ............................................ 18

*Martin v. Wilks*, 490 U.S. 755 (1989) .................................................................. 9

*Mims v. Arrow Financial Services, LLC*, 565 U.S. 368 (2012).......................... 7

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
598 U.S. 288 (2023)................................................................... 4, 5, 6, 7, 8

*New Haven Inclusion Cases*, 399 U.S. 392 (1970)............................................. 9

*Penn-Central Merger and N & W Inclusion Cases*,
389 U.S. 486 (1968)............................................................................ 9, 10

*Perot v. Federal Election Commission*, 97 F.3d 553 (D.C. Cir. 1996) ............... 4

*Public Citizen v. Federal Energy Regulatory Commission*,
839 F.3d 1165 (D.D.C. 2016)........................................................... 13, 18

*Richards v. Jefferson County*, 517 U.S. 793 (1996) ......................................... 10

*Robinson v. Department of Homeland Security Office of Inspector General*,
71 F.4th 51 (D.C. Cir. 2023)................................................................... 8

*Santos-Zacaria v. Garland*, 598 U.S. 411 (2023)......................................... 3, 6

*Shea v. Kerry*, 796 F.3d 42 (D.C. Cir. 2015).................................................... 14

*Spannaus v. Federal Election Commission*, 990 F.2d 643 (D.C. Cir. 1993) .... 24

*United States v. Three Sums Totaling $612,168.23 in Seized United States Currency*, 55 F.4th 932 (D.C. Cir. 2022) .................................................. 24

*United States v. Texas*, 143 S.Ct. 1964 (2023) ..................................... 25, 26, 27

*Wang by and through Wong v. New Mighty U.S. Trust*, 843 F.3d 487 (D.C. Cir. 2016)................................................. 23

*Wilkins v. United States*, 598 U.S. 152 (2023) ........................................... 3, 5, 6

**Statutes**

28 U.S.C. § 1331 ......................................................................................... 6, 7

52 U.S.C. § 30106(b)(1) ................................................................................. 7

52 U.S.C. § 30106(c) ...................................................... 13, 14, 15, 16, 19, 20, 21

52 U.S.C § 30107(a)(6).................................................................................. 21

52 U.S.C. § 30107(e) ...................................................................................... 7

52 U.S.C. § 30109(a)(1)................................................................................. 10

52 U.S.C. § 30109(a)(2)................................................................................. 15

52 U.S.C. § 30109(a)(4)(B)(ii) ....................................................................... 17

52 U.S.C. § 30109(a)(6)................................................................................. 20

52 U.S.C. § 30109(a)(8)......................................................................... 8, 10, 27

52 U.S.C. § 30109(a)(8)(C) ............................................................. 5, 11, 16, 20

**Legislative and Regulatory Authorities**

11 C.F.R. § 111.20(a)..................................................................................... 17

11 C.F.R. § 111.9(b) ...................................................................................... 17

**Other Authorities**

Certification, MUR 6920 (ACU) (Jan. 24, 2017),
    https://perma.cc/SST6-2TR2 ................................................................. 17

FEC Action Policy, 72 Fed. Reg. 12,545, 12,545-46 (Mar. 16, 2007)............. 16

FEC, Legislative History of FECA Amendments of 1976 (1977),
    https://perma.cc/G23G-SQ7T................................................................. 20

Goldmacher, *Democrats' Improbable New F.E.C. Strategy:*
    *More Deadlock Than Ever*, New York Times (June 8, 2021) ............... 22

Office of Comm'r Ann M. Ravel, FEC, Dysfunction and Deadlock (2017),
    https://perma.cc/D95J-L7T9.................................................................. 21

# GLOSSARY

| | |
|---|---|
| **CREW** | Citizens for Responsibility and Ethics in Washington |
| **DCCC** | Democratic Congressional Campaign Committee |
| **Delay ECF No.** | Docket entries in *Campaign Legal Ctr. v. FEC*, No. 1:20-cv-809 (D.D.C) (Jackson, A.B., J.) |
| **DHS** | Department of Homeland Security |
| **DSCC** | Democratic Senatorial Campaign Committee |
| **ECF No.** | Docket entries in the proceedings below, *Campaign Legal Ctr. v. 45Committee, Inc.*, No. 1:22-cv-1115 (D.D.C.) (Mehta, J.) |
| **FEC** | Federal Election Commission |
| **FECA** | Federal Election Campaign Act |
| **FERC** | Federal Energy Regulatory Commission |
| **MUR** | Matter Under Review |
| **NRSC** | National Republican Senatorial Committee |
| **PAC** | Political Committee |

## INTRODUCTION

This Court should reverse. Under FECA, Campaign Legal Center ("Campaign Legal") is entitled to bring this citizen suit to remedy 45Committee's failure to register as a political committee and file public reports with the FEC despite spending tens of millions to influence the 2016 presidential election.

Instead of litigating 45Committee's alleged violations of federal law, the district court required Campaign Legal to relitigate its successful challenge to the FEC's unlawful delay, overruling the prior judgment of the Delay Court. But the district court had no authority to second-guess the Delay Court's ruling, and even if it did, it erred in doing so. 45Committee's response does not show otherwise.

Moreover, 45Committee also failed to justify the district court's erroneous conclusion that the FEC conformed with the Delay Court's order directing it to act by deadlocking in December 2021. 45Committee barely attempts to defend the district court's reasoning that a deadlock is action because it is a dismissal and is unable to show a deadlock is any other type of action either.

Short on law, 45Committee leans instead into false narrative. It makes unsupported assertions that Congress did not intend to provide for private enforcement when the FEC deadlocks. But FECA says otherwise and the legislative history shows that the reform-minded, post-Watergate Congress that created FECA wanted the Act to be effective. Even though it takes two sides to deadlock,

45Committee accuses only half of the Commission of a "scheme" to vote against dismissal while ignoring Commissioners who vote against reason to believe. Yet 45Committee cannot identify any FECA provision requiring Commissioners to dismiss matters they think the agency should pursue.

Finally, 45Committee's assertions that FECA's provision for delay suits and private enforcement violate Article II lack merit and have already been rejected by other courts. Because the Act's provisions governing private enforcement do not require the FEC to prosecute anyone, such suits do not infringe on Article II.

## ARGUMENT

## I. The District Court Erred by Overruling the Delay Court.

As established in Campaign Legal's opening brief, the district court erred by overruling the Delay Court's authorization of this suit on the grounds that FECA's citizen-suit preconditions are jurisdictional. *See* Campaign Legal Br. ("Br.") 21-26. But the preconditions are ordinary claim-processing rules, and FECA provides that the Delay Court is the proper venue for deciding whether they are met. Moreover, the district court lacked authority to overrule that judgment and the Delay Court was right to base its judgment on the FEC's default. Br. 26-38.

45Committee either does not try or is unable to refute these points. Instead, 45Committee asserts only that (1) the preconditions are jurisdictional under precedent predating the Supreme Court's modern jurisprudence, and (2) it is not

precluded from relitigating the Delay Court's ruling here because it failed to timely intervene in the delay proceeding. *See* 45Committee Br. ("Resp.") 27-38. Both arguments fail.

### A.    FECA's Citizen-Suit Prerequisites Are Not Jurisdictional.

45Committee cannot show that FECA's citizen-suit prerequisites are jurisdictional. Tellingly, 45Committee does not dispute that those prerequisites are administrative exhaustion requirements, which set forth the "threshold requirements that claimants must complete, or exhaust." *Wilkins v. United States*, 598 U.S. 152, 157 (2023) (internal citations omitted); *see also*, *e.g.*, *CREW v. Am. Action Network*, 410 F. Supp. 3d 1, 20 (D.D.C. 2019) (finding that section 30109(a)(8)(C) imposes administrative exhaustion requirements); *Englerius v. U.S. Gov't*, 376 F. App'x 765, 766 (9th Cir. 2010) (same). Nor does 45Committee dispute that an administrative exhaustion requirement "is a quintessential claim-processing rule." *Santos-Zacaria*, *v. Garland*, 598 U.S. 411, 417 (2023). 45Committee further does not dispute that the Supreme Court has not deemed such a requirement to be jurisdictional since adopting the clear-statement rule in 2006. *See id.* Finally, 45Committee does not dispute that 52 U.S.C. § 30109(a)(8)(C) does not contain jurisdictional language or otherwise purport to govern federal courts' adjudicatory capacity. Br. 24 (explaining that the statutory preconditions govern "the rights or obligations of the parties" rather

than "the power of the court") (quoting *MOAC Mall Holdings LLC. v. Transform Holdco LLC*, 598 U.S. 288, 298 (2023)).

Instead, 45Committee asks this Court to ignore the Supreme Court's recent and repeated instruction that statutory preconditions to suit are non-jurisdictional absent a clear statement by Congress in favor of circuit precedent that is nearly three decades old. *See* Resp. 28 (citing *Perot v. FEC*, 97 F.3d 553 (D.C. Cir. 1996)). The Court should reject that request.

First, 45Committee fails to explain why *Perot*'s limited holding—that the 120-day provision in section 30109(a)(8)(A) is jurisdictional—controls this case, which was brought under a different provision, section 30109(a)(8)(C). To the extent the FEC's jurisdiction over FECA imposes any limit on courts' adjudicatory power—it does not, *see supra* pp. 5-8—*Perot* held that such a limit extends only "until the FEC act[s] on the claims or until 120 days after those claims had been filed." 97 F.3d at 557; *see also In re Carter-Mondale Reelection Comm., Inc.*, 642 F.2d 538, 543 (D.C. Cir. 1980) (holding that FECA "allows the Commission a *maximum* period of 120 days, beginning from the date the complaint is filed, in which to conduct its investigation without judicial intrusion.") (emphasis added). No one disputes that we are well beyond the 120 days here. Thus, the court's jurisdiction over this matter is established under *Perot* and is not dependent on re-establishing the statutory preconditions in section 30109(a)(8)(C)—which by definition can be

met only after the 120-day period ends. Though 45Committee claims that *Perot* applied its ruling to section 30109(a)(8) more broadly, *see* Resp. 29, this assertion relies entirely on the type of "drive-by" language the Supreme Court has held has "no precedential effect," *Wilkins*, 598 U.S. at 160.

45Committee claims that *Perot* nevertheless applies here because its jurisdictional holding rested on "statutory provisions that have nothing to do with" the statutory preconditions in section 30109(a)(8). Resp. 29 (citing the *Perot* court's reliance on sections 30106(b)(1) and 30107(e) to assert that it properly relied on a purported "clear statement" that the preconditions found in section 30109(a)(8) are jurisdictional). But the Supreme Court has made clear that courts should look first to the text of the statutory precondition itself to determine whether Congress made a clear statement of jurisdictional intent. *See MOAC*, 598 U.S. at 299 ("Start with the text. Far from addressing a court's authority, or refer[ring] in any way to the jurisdiction of the district courts, § 363(m) takes as a given the exercise of judicial power.") (internal citations and quotation marks omitted). And, like in *MOAC*, the statutory preconditions here take the exercise of judicial power as given by twice referencing the authority of the courts to adjudicate the relevant claims:

> *In any proceeding under this paragraph the court may declare* that the dismissal of the complaint or the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which *the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint.*

52 U.S.C. § 30109(a)(8)(C) (emphasis added). Nothing about this text suggests a limit on the adjudicatory power of the courts. Nor are these provisions linked to the general authority of the federal courts to hear claims arising under federal law under 28 U.S.C. § 1331. *See MOAC*, 598 U.S. at 300 ("Statutory context further clinches the case. Congress separated § 363(m) from the Code provisions that recognize federal courts' jurisdiction over bankruptcy matters,"); *see also Wilkins*, 598 U.S. at 159. Unable to show otherwise, 45Committee resorts to emphasizing that Campaign Legal's complaint cites section 30109(a)(8)(C) in support of the court's subject matter jurisdiction over its claim, and thus concedes the preconditions are jurisdictional. But section 30109(a)(8)(C) provides the cause of action for Campaign Legal's claim, and it is unremarkable for a plaintiff to cite the federal law that provides a cause of action as a basis for the court to assert federal question jurisdiction. *See, e.g.*, JA008 (stating "This Court has subject matter jurisdiction over this action pursuant to 52 U.S.C. § 30109(a)(8)(C) *and* 28 U.S.C. § 1331.") (emphasis added).

Moreover, even if the Court were obligated to look beyond the text of section 30109(a)(8)(C), 45Committee fails to show that the disparate provisions on which *Perot* relied provide a clear jurisdictional statement. "Where multiple plausible interpretations exist—only one of which is jurisdictional—it is difficult to make the case that the jurisdictional reading is clear." *Santos-Zacaria*, 598 U.S. at 416. The

correct reading of sections 30106(b)(1) and 30107(e) is that they establish the FEC's "exclusive jurisdiction" over civil enforcement vis-a-vis the rest of the Executive Branch, *see* 52 U.S.C. § 30106(b)(1), while clarifying that this authority *does not extend* to private actions under section 30109(a)(8), *see id.* § 30107(e), over which the federal courts have general jurisdiction under 28 U.S.C. § 1331. But even assuming this reading is merely plausible, and that 45Committee's contrary reading is also plausible, that would be insufficient to show that Congress *clearly* intended the preconditions to be jurisdictional. *MOAC*, 598 U.S. at 298; *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) ("[J]urisdiction conferred by 28 U.S.C. § 1331 should hold firm against mere implication flowing from subsequent legislation." (internal quotation marks omitted)).

As such, even if *Perot* had been a case about section 30109(a)(8)(C), it is no longer good law. The Supreme Court has expressly held that courts should give "no precedential effect," *id.*, to "old lower court cases" that "predate this Court's effort to bring some discipline to the use of the term jurisdictional," *MOAC*, 598 U.S at 304; *see also Santos-Zacaria*, 598 U.S. at 421-22 (same). And "it is black letter law that a circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding on a court of appeals." *Dellums v. U.S. Nuclear Regul. Comm'n*, 863 F.2d 968, 978 n. 11 (D.C. Cir. 1988). This Court has therefore not hesitated to apply *Wilkins* to hold that a statutory precondition that lacks a clear statement is "a

nonjurisdictional claims-processing rule" even when doing so required it to "overrule our decisions to the contrary." *Robinson v. Dep't of Homeland Sec. Off. of Inspector Gen.*, 71 F.4th 51, 56 n.1, 58 (D.C. Cir. 2023). The Court should do the same with *Perot*, if necessary, *cf. infra* pp. 4-5.

**B.     45Committee Misunderstands the Basis for Preclusion Here.**

Unable to show that the citizen-suit prerequisites are jurisdictional, 45Committee falls back on general assertions that it should be allowed to relitigate the Delay Court's ruling because preclusion typically does not run against nonparties. *E.g.*, Resp. 33-38. But 45Committee fails to grapple with FECA's unique statutory structure. As explained in Campaign Legal's opening brief, FECA delineates between the claims at issue in a delay suit (whether the FEC's failure to act within 120 days is contrary to law, and if so whether the FEC conformed within 30 days as directed by the Court), and those at issue in a citizen suit (whether the defendant is liable for violating FECA). *See* 52 U.S.C. § 30109(a)(8); Br. 27-31. Requiring a plaintiff to relitigate the delay suit in its citizen suit serves no rational purpose and is incompatible with "the fair and orderly disposition of litigation," that Congress typically intends when it sets forth such requirements. *MOAC*, 598 U.S. at 298.

45Committee offers no response to this straightforward reading of FECA, asserting only that the statutory text is "beside the point." Resp. 36. But where

Congress creates a special statutory framework for the resolution of predicate issues in litigation involving judicial review of agency action, the judgment of the court overseeing the agency action "precludes further judicial review or adjudication of the issues upon which it passes," with respect to a nonparty who had notice and "adequate opportunity" to participate in the predicate action but failed to timely intervene. *Penn-Central Merger and N & W Inclusion Cases*, 389 U.S. 486, 505-06 (1968); *see also Martin v. Wilks*, 490 U.S. 755, 765 (1989) (citing *Penn-Central* for the proposition that Congress may abrogate the general rule that a party must be joined to be bound by a prior judicial decision in the context of judicial review of agency action pursuant to a "special statutory framework"); *New Haven Inclusion Cases*, 399 U.S. 392, 430 (1970) (holding that in order to prevent duplicate litigation over the same predicate facts in cases where Congress authorizes separate courts to determine separate legal issues, the initial determination of the predicate facts by one court controls any subsequent determination by the other court). Because the structure of FECA confirms that Congress intended the predicate issue of the FEC's unlawful delay and failure to conform to be litigated in the delay suit, a putative citizen-suit defendant who wishes to defend the FEC's inaction must timely intervene in the delay suit. *See* Br. 27-32.

In light of this precedent, 45Committee's assertion that statutory preclusion would implicate due process concerns fails. Resp. 37. Like the nonparty challengers

in *Penn Central*, 45Committee is not precluded from pressing any nonfrivolous defense to liability here. *Cf.* 389 U.S. at 506 (finding that while challenges to the predicate court's review of the agency's action were precluded in subsequent challenges, "any claims for specific relief . . . are unaffected by the decision in the present cases"). Nor is it precluded from challenging this Court's subject-matter jurisdiction on ordinary grounds, such as standing. *See, e.g.*, *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 256 (D.D.C. 2021) (addressing on the merits defendant's 12(b)(1) motion regarding Article III standing). But 45Committee is precluded from relitigating predicate facts, the significance of which FECA authorizes the Delay Court to determine. *See* Br. 27-32.

This is particularly so given that FECA ensures the putative citizen-suit defendant will be on notice of the allegations against it long before any such action arises. *Compare*, *e.g.*, 52 U.S.C § 30109(a)(1) (providing FEC respondents with notice and opportunity to respond within 20 days of a complaint being filed) *with id.* § 30109(a)(8) (requiring FEC complainants to wait at least 120 days after filing a complaint before challenging the FEC's failure to act). Indeed, 45Committee has never asserted that it lacked notice of Campaign Legal's predicate suit against the FEC, only that it was nonetheless justified in its (unsuccessful) strategy of waiting to intervene until after judgment was entered against the FEC. As such, the due process concerns raised by the Court in *Richards v. Jefferson County* are not

implicated here. *See* 517 U.S. 793, 799 (1996) (acknowledging that Congress may create special remedial schemes that preclude "successive litigation" by nonparties so long as those schemes are "consistent with due process").

Nonetheless, 45Committee incorrectly asserts that because the right to bring a citizen suit triggers immediately upon the FEC's failure to conform, without requiring action from the delay court, FECA intended the citizen suit court to "address whether the second precondition was met." Resp. 37. But the FEC bears the burden to establish conformance, not the plaintiff, because the FEC is the party the Delay Court orders to "conform." 52 U.S.C. § 30109(a)(8)(C). The predicate fact of conformance therefore must be resolved in the Delay Court, where the FEC is a party and has an opportunity to establish its conformance, and not in the citizen suit, where the FEC has no role. That FECA does not require the Delay Court to *declare* the FEC's failure to conform does not mean that fact is not determined in the delay proceedings. Indeed, such a formality is unnecessary where the FEC's failure to conform is undisputed in the Delay Court, as it was here. Regardless, the question of how lack of conformance is determined in the Delay Court is not presented here, because Campaign Legal in fact obtained a declaration from the Delay Court that the FEC failed to conform.

## II.  The FEC Did Not Conform to the Delay Court's Order.

Even if the district court had the authority to overrule the Delay Court, it erred in doing so. As Campaign Legal explained, Br. 38-57, the district court's conclusion that the FEC's December 2021 deadlock was final agency action that conformed with the Delay Court's order is contrary to FECA, precedent, and the FEC's regulations, policies, practice, and structure. Since then, a district court in this Circuit agreed, concluding that the ruling on appeal here was incorrectly decided. *See CREW v. FEC*, No. 22-cv-3281-CRC, 2023 WL 6141887, at *10 (D.D.C. Sept. 20, 2023) ("*American Action*").

Perhaps recognizing the weakness of the district court's reasoning, 45Committee's opposition brief mostly ignores it and instead attempts to defend the ruling on alternative grounds. But none of 45Commitee's contentions hold up.

### A.  FEC Deadlocks Are Not Dismissals or Any Other Action.

As Campaign Legal has established, an FEC deadlock is not a dismissal or any other type of FEC action. Br. 39-45.

In response, 45Committee barely attempts to defend the district court's reasoning that a deadlock is action because it is a dismissal and instead calls the issue a "distraction." Resp. 46-50. But the flawed "deadlock dismissal" theory is central here because it is the *sole* basis for the district court's holding. At 45Committee's urging, *e.g.*, ECF No. 25-1 at 20, the district court concluded that the December 2021

deadlock "constituted an 'action'—indeed, a *final* agency action—required by the delay court." JA058 (emphasis added). The court's analysis consists of *dicta* from *Public Citizen v. FERC*, JA057-58, which concludes—incorrectly, *see infra* p. 18—that FEC deadlocks are action because FECA "compels FEC to dismiss complaints in deadlock situations," 839 F.3d 1165, 1170 (D.C. Cir. 2016). While *Public Citizen*'s extraneous FEC discussion does not use the word "final" every time it references "action," that discussion's bottom line is that the FEC "engages in final agency action when . . . it deadlocks." *Id.* at 1170.

As a result, 45Committee's inability to show that FEC deadlocks are dismissals is fatal to its defense of the district court's ruling. 45Committee is also unable to show that deadlocks are any other type of FEC action. As explained below, its claims otherwise are at odds with FECA's text, the FEC's policy and practice, this Court's precedents, and the FEC's bipartisan structure.

## 1. Statutory Text

FECA's majority-vote requirement is unambiguous: "All decisions of the Commission with respect to the exercise of its duties and powers under [FECA] shall be made by a majority vote." 52 U.S.C. § 30106(c). As the *American Action* court explained, "accepting deadlocks as dismissals would violate . . . the majority-vote rule because it would authorize dismissals when the Commissioners are evenly divided." 2023 WL 6141887, at *7.

The district court made no attempt to square its holding with section 30106(c). Br. 46. 45Committee attempts to do so, Resp. 41-43, but forfeited these arguments by not raising them below, *Shea v. Kerry*, 796 F.3d 42, 56 (D.C. Cir. 2015). In any event these arguments lack merit. 45Committee claims that the majority-vote requirement's sweeping application to "[a]ll decisions" regarding the FEC's "duties and powers" is *too narrow* to include the agency's exercise of perhaps its most fundamental power: "acting" on an administrative complaint. Resp. 41-42. But 45Committee admits that its novel theory is inconsistent with its own primary authority, which "'describe[s] § 30106(c) as "requir[ing] FEC *to act* by majority vote.'" Resp. 43 (quoting *Public Citizen*, 839 F.3d at 1170) (emphasis added; second alteration in original).

In any event, 45Committee's reading of section 30106(c) is inconsistent with FECA's text and structure. Section 30106 establishes the FEC. Subsection (c) defines the agency's "[v]oting requirements." That subsection contains a general rule—that a majority-vote is required for "[a]ll decisions"—and an "except[ion]" to that general rule—that four votes are always required for several specified "action[s]." 52 U.S.C. § 30106(c); *accord CREW v. FEC*, 993 F.3d 880, 891 (D.C. Cir. 2021) ("*New Models*"). Given this structure, this Court has correctly understood the general, majority-vote rule to apply to *any* FEC action, except for the specified actions always requiring four votes. Br. 39-40.

In contrast, 45Committee's reading of section 30106(c) makes little sense. It would mean section 30106(c)'s comprehensive description of the FEC's "[v]oting requirements" failed to account for a category of FEC votes: votes that do not constitute "decisions" and therefore do not require majority support, but that nevertheless constitute "action" on a complaint because they are not among the specifically defined "actions" requiring four votes.

45Committee attempts to buttress this reading by claiming FECA "does not address what it means for the Commission to 'act' on an administrative complaint." Resp. 24. But that would be an unlikely omission given how carefully Congress otherwise defined the rules governing FEC "action" on administrative complaints. 52 U.S.C. § 30106(c) (citing *id.* § 30107(a)(6)-(9)). And to interpret section 30106 this way would violate the court's "duty to interpret Congress's statutes as a harmonious whole." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).

Despite claiming FECA forgot to define "action" on a complaint, Resp. 24, 45Committee inconsistently claims FECA contains a "legal requirement to dismiss complaints in deadlock situations" that displaces the common-law rule that only a majority may act for a collective body, *id.* 41. Conspicuously, 45Committee cites no FECA provision for that claim, *id.*, because of course there is no such provision. While FECA requires four votes to find reason to believe, 52 U.S.C. § 30109(a)(2), nothing in the Act suggests that a failed vote constitutes agency action, much less

dismissal. Rather, FECA refers to "dismissal," *id.* § 30109(a)(8), as a discrete action—a "variation suggest[ing] at least that a 'dismissal' is not the same thing as a failed reason-to-believe . . . vote," *American Action*, 2023 WL 6141887 at *7.

Unable to find support in law, 45Committee falls back on colloquialisms, claiming that to "act" means to "do something," and the like. Resp. 24. But such truisms prove nothing. Even assuming "act" in section 30109(a)(8)(C) means to "do something," section 30106(c)'s majority-vote rule defines when the FEC does something. Meanwhile, the scope of the casual definition of "act" that 45Committee would import into FECA is boundless. Even if the General Counsel's preparation of a recommendation would not qualify, Resp. 43, surely something as trivial as the Commission's *reading* of that recommendation would. Such a definition would nullify FECA's protection against FEC inaction.

## 2. FEC Policy and Practice

Even in the unlikely event Congress neglected to define FEC action on a complaint in FECA, *cf.* Resp 24, the Court should defer to the FEC's interpretation of its own enabling statute. *See American Action*, 2023 WL 6141887 at *8 (granting *Skidmore* deference to the FEC's rejection of the deadlock-dismissal theory). The FEC's policy is that all FEC action, including dismissal, requires four votes. FEC Action Policy, 72 Fed. Reg. 12,545, 12,545-46 (Mar. 16, 2007). Indeed, in recent litigation against 45Committee, the FEC disputed the deadlock-dismissal theory

because "it could result in dismissals of enforcement matters when that was not the will of a majority of Commissioners." FEC's Mem. in Supp. of Its Mot. for Summ. J. at 17, *45Committee, Inc. v. FEC*, No. 22-cv-502 (D.D.C. June 24, 2022), ECF No. 18. Instead, "[t]he FEC's practice for more than four decades has been to dismiss such enforcement matters only by the inclusion of a distinct vote to 'close the file.'" *Id.* at 10; *accord* Br. 42-43. This rule permits the FEC to continue to deliberate in the face of an initial deadlock. *See, e.g.*, Certification, MUR 6920 (ACU) (Jan. 24, 2017), https://perma.cc/SST6-2TR2 (approving conciliation after prior deadlock on merits).

Like the district court, 45Committee largely ignores the FEC's views—except to dispute the FEC's own understanding of the vote to close the file, claiming it is "ministerial" and only "serves to fulfill the agency's statutory notification requirements." Resp. 7. But 45Committee fails to explain why the FEC would bother with such a superfluous vote. If deadlocks are dismissals, as 45Committee claims, the deadlock would be sufficient to trigger the Act's notification requirements. *See* 52 U.S.C. § 30109(a)(4)(B)(ii); 11 C.F.R. §§ 111.9(b), 111.20(a).

### 3. Precedent

45Committee acknowledges that this Court has said that the FEC may act only by majority vote. Resp. 43 (citing Br. 39-40 (citing cases)). Applying that rule, courts have also repeatedly recognized that a deadlock is not a dismissal. Br. 44-45; *see*

*also American Action*, 2023 WL 6141887 at \*9 ("[T]he file closure, not the reason-to-believe vote on its own, was the moment the case was 'dismissed.'").

None of 45Committee's precedents show otherwise. Resp. 19-24, 39-40. 45Committee claims *Public Citizen* is dispositive, but one court recently found it was "not persuaded" by *Public Citizen* because it (1) "was not a case about the FEC deadlock phenomenon" and so "had no occasion to distinguish between the distinct phenomena of reason-to-believe votes, file closures, and dismissals or to analyze any overlap between those concepts," and (2) "did not express any awareness of the Commission's practice of declining to close the case file after a deadlocked reason-to-believe vote." *American Action*, 2023 WL 6141887 at \*9; *accord* Br. 48-50. More persuasive than *Public Citizen*'s *dicta* about the FEC is its holding that, in ordinary usage, a deadlock vote does not constitute action. *Public Citizen*, 839 F.3d at 1165 ("By its very terms, then, the nature of a deadlock confirms FERC neither reached a collective decision nor engaged in an 'action' of any kind.")

The other three cases upon which 45Committee relies—*NRSC*, *In re Sealed Case*, and *New Models*—were not even cited by the district court. And with good reason: none of them find that an FEC deadlock is action. *NRSC* and *Sealed Case* explain that courts defer to the reasoning of the Commissioners who voted against reason to believe when reviewing an FEC dismissal following a deadlock. *See FEC v. NRSC*, 966 F.2d 1471, 1476 (D.C. Cir. 1992); *In re Sealed Case*, 223 F.3d 775,

779-80 (D.C. Cir. 2000). As this Court has explained, this doctrine is a "rather apparent fiction" created to allow for meaningful judicial review, *CREW v. FEC*, 892 F.3d 434, 437-38 (D.C. Cir. 2018) ("*Commission on Hope*"), and although courts will consider "the views of the decliners," those views are still "not law" because they are unsupported by a "majority vote," *Common Cause v. FEC*, 842 F.2d 436, 449 & n.32 (D.C. Cir. 1988).

As for *New Models*, that ruling also recognizes that FEC dismissals fall under "FECA's general rule that the Commission must make decisions by majority vote. *See* 52 U.S.C. § 30106(c)." *New Models*, 993 F.3d at 890; *accord American Action*, 2023 WL 6141887, at *7. Although *New Models* rejected the argument that section 30106(c)'s four-vote exception should govern dismissals instead of the general majority-vote rule, 993 F.3d at 891 & n.10, no one is making that argument here and so it is unsurprising that even the district court does not mention the case, *cf.* Resp. 39.

### 4.      FEC's Structure and Private FECA Enforcement

Finally, 45Committee and amicus Institute for Free Speech ("The Institute") both assert that Congress designed the FEC to be inherently bipartisan and required four votes to pursue a complaint to prevent partisan enforcement by the agency. Resp. 5, Amicus Brief 10-11.

But preventing partisan enforcement by the agency was not Congress's *only* concern, as 45Committee and the Institute claim. Resp. 2, 25-26, 44-45; Amicus Brief 10-11. The reform-minded, post-Watergate Congress that created the FEC and FECA also wanted the Act to be *effective*. That Congress thought enforcement "cannot be left to a commission that is under the thumb of those who are to be regulated." FEC, Legislative History of FECA Amendments of 1976 at 72 (1977) (statement of Sen. Clark), https://perma.cc/G23G-SQ7T. It feared the FEC would become a "toothless lapdog" rather than the "active watchdog" required to "restor[e] [] public confidence in the election process." *Id.* at 75 (statement of Sen. Scott). And so Congress provided for private enforcement when the agency deadlocks on partisan lines "to assure that the Commission does not shirk its responsibility to decide" whether to pursue or dismiss a complaint. *DCCC v. FEC*, 831 F.2d 1131, 1134 (D.C. Cir. 1987) (quoting 125 Cong. Rec. S. 36,754 (1979) (statement of Sen. Pell)).

Private enforcement due to FEC partisan deadlock does not "nullify" the four-vote rule, as 45Committee insists. Resp. 25. That rule applies only to "the Commission," 52 U.S.C. § 30106(c), *id.* § 30109(a)(6). By contrast, FECA allows courts to authorize a citizen suit. *Id.* § 30109(a)(8)(C). Because a citizen suit is brought in the complainant's own name, *id.*, FECA never requires the FEC to bring an enforcement action despite lacking four votes to do so. *See Iowa Values*, 573 F.

Supp. 3d at 255 (a FECA citizen-suit plaintiff "is not vindicating a public right in the courts" but its own injury). Moreover, FECA expressly places a thumb on the scale for private enforcement by requiring four votes to authorize the defense of a section 30108(a)(8)(a) suit, *see* 52 U.S.C. §§ 30106(c), 30107(a)(6), precluding the FEC from appearing in court to defend itself when the Commissioners are equally divided over whether its actions or inaction are lawful.[1]

Finally, 45Committee is wrong that FECA "never" produced a citizen suit until 2018, *see, e.g.*, *DSCC v. NRSC*, 1:97-cv-1493-JHG (D.D.C. filed June 30, 1997), but in any event, it reads far too much into the recent increase in such suits, Resp. 18, 26. That increase should come as no surprise given the contemporaneous and well-documented decrease in enforcement and increase in partisan dysfunction at the FEC during the last 15 years. *See, e.g.*, Office of Comm'r Ann M. Ravel, FEC, Dysfunction and Deadlock (2017), https://perma.cc/D95J-L7T9.

While deadlock is inherently a bipartisan problem, 45Committee inaccurately paints just one side's refusal to compromise as a "scheme." Resp. 10. 45Committee is obviously dissatisfied with certain Commissioners' votes, but conspicuously missing from its brief is any authority stating that Commissioners are *legally*

---

[1]    45Committee objects to certain Commissioners not voting to authorize the FEC to defend itself in court, but as 45Committee's own citation to 52 U.S.C. § 30107(a)(6) shows, Br. 10, its objection is to the statute itself.

*required* to dismiss matters. That some Commissioners vote not to dismiss matters they would prefer to pursue is no more a "scheme" than other Commissioners voting not to pursue those matters the first place. *See* Goldmacher, *Democrats' Improbable New F.E.C. Strategy: More Deadlock Than Ever*, N.Y. Times (June 8, 2021) (quoting one Commissioner as stating: "If I don't believe the case ought to be dismissed, why would I vote to dismiss?").

It is true that for much of the FEC's history, Commissioners who supported finding reason to believe in a deadlocked vote nevertheless *chose* to vote to dismiss. *See American Action*, 2023 WL 6141887, at *6. That made sense because, in the words of one Commissioner, dismissal gave "complainants . . . a shot at convincing a court that the Commission's dismissal action had been contrary to law, and the law could then be enforced." *Heritage Action for Am. v. FEC*, No. 22-cv-1422 (D.D.C.), ECF No. 41-1 at 6. But that calculus changed in 2018 when this Court decided in *Commission on Hope* that an FEC dismissal is no longer reviewable if the not-going-forward commissioners base their votes even in part on discretionary reasons. *Id.* For a Commissioner who voted in favor of reason to believe and against exercising prosecutorial discretion, opposing a dismissal they believe to be unlawful is not a scheme but a rational and statutorily permitted avenue to allow for judicial review of the underlying claims upon which the Commission is divided.

Finally, 45Committee should not be heard to complain about facing the risk of private enforcement. That risk has been present since the citizen-suit provision was enacted. While 45Committee is apparently unhappy that deepening FEC dysfunction has not precluded potential accountability for its FECA violations, "that is the price of a deeply divided Commission, and it is not the judiciary's role to rectify the matter by changing the rules." *American Action*, 2023 WL 6141887, at *11.

## B. Even if Deadlocks Are Action, the December 2021 Vote Was Not

45Committee's brief, Resp. 50-51, does not dispute that if deadlocks are dismissals, as it claims, then the December 2021 deadlock could not have conformed because the FEC had already dismissed the complaint by deadlocking 16 months earlier in June 2020. Br. 53-54. 45Committee also does not dispute that neither "dismissal" constituted lawful action because the FEC failed to timely explain either "dismissal" as required by *End Citizens United PAC*. Br. 52-53. The Court should thus reverse on these grounds alone.

45Committee's only substantive response to these arguments is to renew its incorrect claim that it is "beside the point" whether a deadlock is a dismissal, Resp. 51. *But see supra* pp. 12-13. 45Committee also claims forfeiture, Resp. 50, but these arguments were not forfeited because they were either raised below, *see, e.g.*, ECF No. 26 at 23-27, ECF No. 30 at 7-8, 10, or "result[] . . . from an intervening change

in the law" (*i.e.*, *End Citizens United PAC*), *Wang v. New Mighty U.S. Tr.*, 843 F.3d 487, 493 (D.C. Cir. 2016).

## III. Even if the FEC Did Conform, Equity Demands Reversal Because the FEC Prevented Campaign Legal from Satisfying the Preconditions.

As Campaign Legal has shown, assuming *arguendo* the district court's ruling were legally correct, the FEC illegally deprived Campaign Legal of its ability to timely challenge the FEC's alleged dismissal(s), and so the Court should grant an equitable exception to the non-jurisdictional citizen-suit prerequisites. Br. 56.

45Committee's responses all fail. First, 45Committee claims the prerequisites are mandatory, Resp. 51, but "claim-processing rules are . . . subject to . . . equitable exceptions." *United States v. $612,168.23*, 55 F.4th 932, 938 (D.C. Cir. 2022). Second, 45Committee asserts Campaign Legal has not been diligent, Resp. 52, but both the district court below, JA058, and the Delay Court disagree, Delay ECF No. 37 at 11. Third, 45Committee contends Campaign Legal could have challenged the FEC's dismissal within 60 days of "public notice of the dismissal" (rather than "the date of the dismissal" as FECA says), Resp. 52-53, but this Court rejected that argument 30 years ago. *Spannaus v. FEC*, 990 F.2d 643, 644 (D.C. Cir. 1993). Fourth, allowing this suit to continue would not "punish" 45Committee, Resp. 53, because had the FEC not prevented Campaign Legal from timely filing a dismissal challenge, 45Committee would have faced the risk of a citizen suit anyway. Finally,

there has been no forfeiture, Resp. 50, given intervening changes in the law since the district court's ruling. *See* Br. 54-55 (citing *Heritage Action*).

## IV. This Suit Does Not Implicate Article II.

45Committee asserts that allowing private litigants to seek redress for individual harms in federal court raises "serious constitutional problems" under Article II. Resp. 54-61. Not so: FECA's judicial-review provisions do not infringe on, or even implicate, the Executive Branch's prosecutorial discretion or its authority to vindicate public rights.

45Committee contends that the Supreme Court's recent decision in *United States v. Texas* suggests that section 30109(a)(8) interferes with the FEC's prosecutorial discretion by dictating when it will undertake an enforcement action and when it will decline to do so. Resp. 55-56. But section 30109(a)(8) is nothing "like" the provision at issue in *Texas*. *Cf.* Resp. 56. There, the Supreme Court held that States lack standing to challenge DHS's immigration-enforcement guidelines for allegedly violating federal laws requiring DHS "to arrest *more* criminal noncitizens pending their removal." *United States v. Texas*, 143 S.Ct. 1964, 1968 (2023). As the Supreme Court explained, *Texas* was "a highly unusual lawsuit" involving a "discrete" and "narrow" standing issue that "rarely arises because federal statutes that purport to *require* the Executive Branch to make arrests or bring prosecutions are rare." *Id.* at 1974-75.

Section 30109(a)(8) "does not 'mandate' or 'require' the FEC to prosecute anyone." *CREW v. Am. Action Network*, 410 F. Supp. 3d 1, 26 (D.D.C. 2019), *reconsidered on other grounds*, 590 F. Supp. 3d 164 (D.D.C. 2022). And so other courts have already rejected the arguments 45Committee asserts. *See id.*; *Iowa Values*, 573 F. Supp. 3d at 256. As those cases explain, section 30109(a)(8) suits "do not implicate the Executive Branch's prosecutorial discretion." *Iowa Values*, 573 F. Supp. 3d at 256. Section 30109(a)(8) "only says that a private citizen may file suit if the FEC fails to conform with a court order" finding that its delay on or dismissal of an administrative complaint was 'contrary to law.'" *Am. Action Network*, 410 F. Supp. 3d at 26 (citing *CREW v. FEC*, 892 F.3d 434, 441 n.11 (D.C. Cir. 2018)).

Nothing in section 30109(a)(8) allows a federal court to order the FEC to conduct "more prosecutions." *Texas*, 143 S.Ct. at 1970. As this Court has recognized, FECA "imposes no constraints on the Commission's judgment about whether, in a particular matter, it should bring an enforcement action." *Commission on Hope*, 892 F.3d at 439 (emphasizing that FECA says only that the FEC "may, upon an affirmative vote of 4 of its members, institute a civil action"). Nor does section 30109(a)(8) dictate *when* the FEC must prosecute. Rather it dictates when a plaintiff is entitled to seek relief on its individual injury in federal court. As such, section 30109(a)(8) is decidedly *unlike* the type of statute the *Texas* Court suggested might raise Article II concerns. *Cf.* Resp. 56.

Indeed, as 45Committee acknowledges, the Supreme Court in *Texas* explicitly acknowledged that its holding does not implicate FECA's private right of action, as interpreted by *FEC v. Akins*, 524 U.S. 11 (1998), because FECA is an example of where "Congress [has] elevate[d] *de facto* injuries to the status of legally cognizable injuries redressable by a federal court." *Texas*, 143 S.Ct. at 1973. In *Akins*, the Supreme Court held that an FEC complainant has Article III standing to sue the agency under FECA's judicial-review provision, 52 U.S.C. § 30109(a)(8), when it alleges an informational injury due to the FEC's dismissal of, or failure to act on, a violation of campaign-finance disclosure laws, 524 U.S. at 21-26. In so holding, the *Akins* Court rejected the FEC's argument that the agency's "decision not to undertake an enforcement action" was "not subject to judicial review," explaining that, "[w]e deal here with a statute"—section 30109(a)(8)—"that explicitly indicates the contrary." *Id.* at 26. And though *Texas* held that the State plaintiffs there lacked standing to force DHS "to arrest *more*" people, *Texas*, 143 S.Ct. at 1968, the Court also made clear that "we do not suggest that federal courts may never entertain cases involving the Executive Branch's alleged failure to make more arrests or bring more prosecutions," *id.* at 1973. Thus, *Texas* has no bearing on this case.

## CONCLUSION

For the foregoing reasons, this Court should reverse.

Dated: October 11, 2023

Respectfully submitted,

/s/ *Molly E. Danahy*

Adav Noti
Kevin P. Hancock
Molly E. Danahy
Alexandra Copper
CAMPAIGN LEGAL CENTER
1101 14th Street, NW, St. 400
Washington, D.C. 20005
(202) 736-2000
mdanahy@campaignlegalcenter.org

*Counsel for Appellant*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 6,453 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

This filing complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Office Word 2016 in Times New Roman 14-point font.

*/s/ Molly E. Danahy*
Molly E. Danahy

**CERTIFICATE OF SERVICE**

I certify that on October 11, 2023, I electronically filed this brief with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system, thereby serving all persons required to be served.

*/s/ Molly E. Danahy*
Molly E. Danahy